UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ANDREA SLATER,

                    *Plaintiff*,

         -against-

NYU LANGONE HEALTH SYSTEM,

                 *Defendant*.
-------------------------------------------------------------x

                                   **MEMORANDUM AND ORDER**
                                   24-CV-03711 (OEM) (SIL)

ORELIA E. MERCHANT, United States District Judge:

Plaintiff Andrea Slater ("Plaintiff") brings this disability discrimination and retaliation action under the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL") against New York University Langone Health System ("Defendant" or "NYU Langone"). Plaintiff asserts the following claims: (1) disability discrimination under the ADA, (2) disability discrimination under the NYSHRL, (3) retaliation under the ADA, and (4) retaliation under the NYSHRL.

Before the Court is Plaintiff's motion to amend/correct/supplement her Complaint, her Proposed Amended Complaint, and Defendant's fully briefed motion to dismiss Plaintiff's Complaint and Proposed Amended Complaint.[1] For the following reasons, Defendant's motion to dismiss is granted in part and denied in part.

## BACKGROUND

Since July 2015, Plaintiff has been working as a Scheduling and Registration Coordinator at NYU Langone. Compl. ¶ 12. As part of her job, Plaintiff schedules

---

[1] Motion to Dismiss, ECF 14 ("Mot. to Dismiss"); Memorandum of Law in Support of Defendant's Motion, ECF 15 ("Def.'s MoL"); Plaintiff's Motion to Amend/Correct/Supplement Complaint and Response in Opposition to Defendant's Motion, ECF 12 ("Pl.'s Mot. & Opp."); Reply in Support of Defendant's Motion, ECF 17 ("Def.'s Reply"); Complaint, ECF 1 ("Compl."); Proposed Amended Complaint, ECF 12-2 ("PAC").

appointments, manages calendars, enters data, and performs other administrative tasks. *Id.* ¶ 13. In 2017, Plaintiff's manager asked Plaintiff to perform certain insurance verification and referral-related tasks, "due to the high volume of patients." *Id.* ¶ 14.

Plaintiff alleges that she suffers from chronic migraines, cluster headaches, and occipital neuralgia. *Id.* ¶ 16. In or around the "second week of June 2023," Plaintiff began complaining about the temperature in NYU Langone's office and asked her supervisor, Thania Jean-Noel ("Jean-Noel"), and the "nurse's manager," Cristina Mendes ("Mendes"), to increase the temperature. *Id.* ¶ 27; Equal Employment Opportunity Commission ("EEOC") Complaint[2], Ex. B to Affirmation of Kathryn J. Barry, Esq. in Support of Defendant's Motion to Dismiss ("EEOC Compl."), ECF 16-2 at 7. Plaintiff alleges that she told Jean-Noel that it was "too cold [and that her] head [wa]s going to explode" and that her head "hurt[] a lot," and told Mendes that it was "very cold" and that she was "getting sick." EEOC Compl. at 7-8.

In response, NYU Langone closed the vent over Plaintiff's desk, Mendes asked the engineering team to increase the temperature to 70 degrees and recommended Plaintiff dress warmly and keep a sweater at her desk, and Jean-Noel offered Plaintiff a space heater. *Id.*; Compl. ¶ 28. When Plaintiff declined the space heater and asked if she could wear a hat instead, Jean-Noel agreed. EEOC Compl. at 8. Plaintiff began wearing a hat and winter jacket

---

[2] The Court may properly consider Plaintiff's EEOC complaint, EEOC Compl., at the motion to dismiss stage. Such charges are generally considered to be "public documents" that are "integral to" a plaintiff's claims. *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010); *see also Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 394 n.1 (S.D.N.Y. 2012) ("Because the EEOC [c]harge is part of an administrative proceeding, the [c]ourt may take judicial notice of it without converting [the] [d]efendant's motion into a motion for summary judgment."); *McLeod v. Lowe's Home Improvement*, 09-CV-834, 09-CV-835, 2010 WL 4366901, at *2 n.2 (N.D.N.Y. Oct. 28, 2010) ("On [a] Fed. R. Civ. P. 12(b)(6) motion, the [c]ourt may properly consider the EEOC charges and right-to-sue notices because they are public documents in administrative proceedings and are integral to [the] plaintiff's claims."). When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit or matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

to work but alleges that Jean-Noel laughed and stated she "didn't know that it was still winter in th[e] office" when she saw Plaintiff.  Compl. ¶ 36.  According to Plaintiff, that statement made "other employees feel comfortable enough to make similar remarks and jokes about Plaintiff's" warm clothing.  *Id.* ¶ 37.  Plaintiff does not identify what remarks were made, though she alleges that "most of the jokes" were made by "one employee," who according to Plaintiff's EEOC complaint, left NYU Langone on or around July 28, 2023.  *Id.* ¶ 39; EEOC Compl. at 15-16.

On August 1, 2023, Plaintiff requested to work from the "annex," an area that had historically been used for "storage, the three people who answer the phones, and a person who rotates according to [a] schedule made and approved by [Jean-Noel]."  Compl. ¶ 42; EEOC Compl. at 15.  That day, Plaintiff emailed Jean-Noel a letter from her neurologist, explaining that the letter "supports [her] verbal request to move [her] desk to a place in the office where [she was] not exposed to the extreme cold to which [she is] currently exposed, which is affecting [her] health condition making it worse day by day."  EEOC Compl. at 10.  According to the letter, Plaintiff was being treated for "severe migraine headaches that can be triggered by cold."  *Id.* at 9; Compl. ¶ 46.

Following receipt of the letter, NYU Langone relocated Plaintiff to the back office area and confirmed that the vent above her desk was closed.  EEOC Compl. at 9; Compl. ¶ 47. Jean-Noel told Plaintiff that NYU Langone provides disability accommodations and sent Plaintiff a copy of NYU Langone's disability accommodation request form.  EEOC Compl. at 10.  Plaintiff tried the new workstation in the back office, but she later complained that the back office was too cold, the "lighting and extreme noise were too much," her new desk was too small, her "two computer screens were overlapping, the distance between the person next

to [her] was minimal, [and her] elbow was touching the other person['s] elbow." *Id.* at 11; Compl. ¶¶ 53, 84. In response to Plaintiff vocalizing some of these complaints to Jean-Noel, Jean-Noel rearranged Plaintiff's desk and asked Plaintiff if she had to be a "bother." Compl. ¶¶ 59-60.

On August 3, 2023, Plaintiff emailed Kerry Mackey ("Mackey"), Vice President of Hospital Operations, Women's & Children's Services, to "complain[] about the ongoing disability discrimination and retaliation." *Id.* ¶ 65. Mackey told Plaintiff to contact Lisa Malikin ("Malikin"), the Administrative Director for the Pediatrics Department at NYU Langone Hospital – Long Island. *Id.* ¶ 66. Plaintiff and Malikin met on August 14, 2023. *Id.* ¶¶ 71, 74. Earlier that day, Plaintiff learned that Jean-Noel was moving other unidentified employees into the annex area. *Id.* ¶ 73. Plaintiff and Malikin discussed Plaintiff's desire to work from the annex, Plaintiff's belief that Jean-Noel "disliked" Plaintiff, Plaintiff's belief that NYU Langone had violated its policies, and Malikin's disapproval of the tone of Plaintiff's emails. *Id.* ¶¶ 74-81.

Malikin and Jean-Noel met with Plaintiff later that month. *Id.* ¶ 83. During that meeting, Malikin explained that NYU Langone's Employee & Labor Relations ("ELR") Department did not understand Plaintiff's concerns about "lighting and extreme noise," and wanted to speak with Plaintiff's doctor. *Id.* ¶ 84. Though Plaintiff alleges that she had provided a note "two (2) months prior," that note does not state or indicate that her migraines were triggered or caused by light or noise. *Id.* ¶ 46. Plaintiff claims that Malikin then "punished Plaintiff by removing her insurance and referral responsibilities," and told Plaintiff that she was "nothing more than part of the mix, just like the others." *Id.* ¶¶ 86-87.

On or around September 7, 2023, Malikin called an impromptu meeting with Plaintiff and Jean-Noel. *Id.* ¶ 89. Malikin told Plaintiff she could not bring her cell phone into the meeting and that the "recordings have to stop." *Id.* ¶¶ 89-95. When Plaintiff asked Malikin if she could have a witness at the meeting, Malikin stated that Jean-Noel would be her witness, and told Plaintiff that she would be written up if she refused to attend. *Id.* ¶¶ 102-06. According to Plaintiff, Malikin told Plaintiff that she could not record the workplace or scan personal documents, asked about videos Plaintiff had recorded, and questioned why she had been at a coworker's workstation. *Id.* ¶¶ 105-13. Malikin then asked Plaintiff why she did not trust Malikin and Jean-Noel and why she had filed a complaint. *Id.* ¶¶ 115-16.

On September 25, 2023, Derek Forte and Marissa Layne from NYU Langone's ELR Department met with Plaintiff. *Id.* ¶ 125. During this meeting, Forte proposed an arrangement that Malikin and Jean-Noel had, at some unidentified point in time, already offered: Plaintiff could work from the front office area, in her existing role, during her regular working hours (7:00 a.m. to 3:00 p.m.) or she could work from the annex, modify her schedule (to 9:00 a.m. to 5:00 p.m.), and focus primarily on answering telephones. *Id.* ¶¶ 126-27. Plaintiff chose the latter option. *Id.* ¶ 146. Plaintiff alleges that she told Forte that there "were . . . three employees working the phones [during the 7:00 a.m. to 3:00 p.m.] shift[.]" *Id.* ¶ 129.

Plaintiff remains in this position to date. She received her performance evaluation in November 2023. *Id.* ¶ 148. Despite having "anticipated" a scored evaluation of five (5), she received a four (4), which Plaintiff claims impacted her bonus eligibility. *Id.* ¶¶ 148-49. Plaintiff suggests that she anticipated a higher score based on an April 13, 2023 meeting she had with Mackey, where Plaintiff claims Mackey told Plaintiff that "she deserved a scored evaluation of five (5) for her annual review based on her work performance." *Id.* ¶ 21.

On or around September 8, 2023, Plaintiff filed an administrative complaint with the New York State Department of Human Rights ("NYSHR"), which was cross-filed with the EEOC. *See id.* ¶¶ 10-11; EEOC Compl. at 3. This lawsuit followed.

## LEGAL STANDARD

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(B)(6). To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing FED. R. CIV. P. 8).

In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Id.* But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Id.* "When reviewing a motion under Rule 12(b)(6), 'the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient facts to survive.'" *Havens v. James*, 76 F.4th 103, 116-17 (2d Cir. 2023) (citation omitted).

### B. Motion to Amend

"A district court has broad discretion in determining whether to grant leave to amend[.]" *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). "The court should freely give leave when justice so requires." FED. R. CIV. P. 15(A)(2). When a plaintiff seeks to amend their complaint

while a motion to dismiss is pending, "the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint." *Pettaway v. Nat'l Recovery Sols.*, LLC, 955 F.3d 299, 303-04 (2d Cir. 2020); *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016) ("Where a plaintiff seeks to amend his complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'") (collecting cases).

Here, the Proposed Amended Complaint does not add new claims or parties or drastically change the allegations in the original complaint. Therefore, for procedural efficiency, rather than deny the motion to dismiss as moot, the Court considers Defendant's arguments in light of the facts alleged in Plaintiff's Proposed Amended Complaint. Thus, "'if the proposed amended complaint cannot survive the motion to dismiss, then plaintiff['s] []motion to amend will be denied as futile.'" *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016) (quoting *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F.Supp.3d 331, 338-39 (E.D.N.Y. 2014)).

## DISCUSSION

Plaintiff alleges that Defendant's actions toward her because of her disability and in response to her requests for accommodations for her disability violated the ADA and the NYSHRL.

### A. ADA Claims

Plaintiff asserts claims against Defendant under the ADA for disability discrimination and retaliation under 42 U.S.C. §§ 12101 *et seq.*

### 1.  Timeliness

As a threshold matter, the Court addresses the timeliness of Plaintiff's suit.  *See Maccharulo v. Gould*, 643 F. Supp. 2d 587, 592-93 (S.D.N.Y. 2009) (noting that Rehabilitation Act and Title II ADA claims are "governed by the applicable state statute of limitations for personal injury actions").  Plaintiffs who bring suit under the ADA must first file a complaint with the EEOC within 300 days of the allegedly discriminatory act.  *See* 42 U.S.C. § 12117(a) (applying Title VII enforcement procedures to ADA claims); *Rosado v. Port Auth. of N.Y. & N.J.*, 22-587, 2024 WL 658776, at *2 (2d Cir. Feb. 16, 2024) ("plaintiffs asserting claims under the ADA must first file a charge of discrimination with the EEOC"); *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) ("Ordinarily, a plaintiff seeking to bring a claim pursuant to the [ADA] . . . must exhaust administrative remedies through the EEOC.").  Here, the record, *see generally supra* n.1, reflects that Plaintiff filed her EEOC charge on September 8, 2023, EEOC Complaint at 18, and alleges that the most recent or continuing discrimination took place on September 7, 2023, *id.* at 2.  Therefore, the Court concludes that Plaintiff's ADA claims are timely.

### 2.  Disability Discrimination

Plaintiff alleges that "Defendant has discriminated against Plaintiff on the basis of her disability in violation of the ADA by subjecting Plaintiff to disparate treatment based upon her disability including, but not limited to, discrimination, and a hostile work environment."[3]  PAC ¶ 162.

---

[3] Although Plaintiff mentions a "hostile work environment" in both complaints, she does not plead a distinct hostile work environment claim under the ADA.  *See* Compl. ¶ 155; PAC ¶ 162.  Instead, she mentions experiencing a hostile work environment when pleading her disability discrimination claim under the ADA.  *See* Compl. ¶ 155; PAC ¶ 162.

Title I of the ADA prohibits employers from "discriminat[ing] against a qualified individual *on the basis of* disability in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a) (emphasis added). ADA employment discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-07 (1973). Under that framework, the question on a motion to dismiss is whether the plaintiff has adequately pleaded a prima facie case of discrimination. *Id.* at 802. To state a prima facie case of discrimination under the ADA, a plaintiff must allege that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).

ADA disability discrimination claims may be brought under an adverse employment action or failure to provide a reasonable accommodation theory. *See McMillan v. N.Y.C.*, 711 F.3d 120, 126 (2d Cir. 2013); *Suarez v. N.Y. Cnty. Dist. Att'ys Off.*, 22-CV-10855 (PGG) (OTW), 2025 WL 894516, at *12 (S.D.N.Y. Mar. 24, 2025). The primary "distinction between the two theories is that an adverse-employment-action claim considers whether the plaintiff could perform her job duties *even without* a reasonable accommodation. By contrast, a failure-to-accommodate claim asks if the plaintiff could perform her job duties *if she received* such an accommodation." *Papaliberios v. Mount Sinai Health Sys., Inc.*, 23-CV-8661 (EK) (AYS), 2025 WL 964114, at *3 (E.D.N.Y. Mar. 31, 2025).

Here, because Plaintiff's complaint invokes both disability discrimination theories, the Court addresses each in turn.

### a. Adverse Employment Theory

To proceed on an adverse employment action theory of disability discrimination, a plaintiff must allege that "(1) the defendant is a covered employer; (2) the plaintiff suffered from, or was regarded as suffering from, a disability within the meaning of the statute; (3) the plaintiff was qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (4) she suffered an adverse employment action because of her disability or perceived disability." *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 566-67 (S.D.N.Y. 2023). Plaintiff has alleged the first three elements, and Defendant disputes that Plaintiff has alleged the fourth element: that Plaintiff suffered an adverse employment action.

Second Circuit precedent suggests that an action is an adverse employment action under the ADA if "the employer's action toward the plaintiff [is] materially adverse with respect to the terms and conditions of employment." *Davis*, 804 F.3d at 235. However, the Supreme Court held in the Title VII context that to establish an adverse employment action, a plaintiff "must [merely] show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 355 (2024). Although the Second Circuit has not yet clarified whether the standard for an adverse employment action under the ADA also changed following the Supreme Court's decision in *Muldrow*, the definition of an adverse employment action under Title VII is the same as under the ADA, *Richards v. Dep't of Educ. of N.Y.C.*, 21-CV-338 (LJL), 2022 WL 329226, at *8 (S.D.N.Y. Feb. 2, 2022), and courts in this Circuit have held that *Muldrow* applies to ADA discrimination cases. *See Mitchell v.*

*Planned Parenthood of Greater N.Y.*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024); *see also Cangro v. N.Y.C. Dep't of Fin.*, 23-CV-10097 (LAP), 2024 WL 4582369, at *2 (S.D.N.Y. Oct. 25, 2024).  Therefore, the Court applies the *Muldrow* standard when analyzing the five purported distinct adverse employment actions asserted by Plaintiff.  *See* Pl.'s Mot. & Opp. at 8.

### i.    Performance Review

Plaintiff alleges that her 2023 annual performance review score was lower than it should have been because of Defendant's disability discrimination and that the lower score resulted in a 25% reduction in her bonus.  PAC ¶ 153.  "[W]hile Plaintiff demonstrated exemplary work performance throughout 2023 and anticipated a scored evaluation of five (5) for her annual review, she received a lower scored evaluation of four (4) for her annual review in November 2023[.]" *Id.* ¶ 151.  "As a result of not receiving a scored evaluation of five (5) for her annual review, Plaintiff received a diminished bonus for her work performance in 2023.  Plaintiff believes that her bonus was reduced by 25% because of the lower evaluation." *Id.* ¶ 153.  "Plaintiff continued to perform at a high level after her April 2023 meeting with Mr. Mackey, but she was given a lower performance evaluation because she is disabled and made repeated requests for accommodations.  Plaintiff's compensation was diminished because she is disabled and requested accommodations." *Id.* ¶¶ 151-52.

A lower "employment evaluation, if accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss, may constitute an adverse employment action." *Smith v. N.Y.C. Dep't of Educ.*, 18-CV-8545 (PGG), WL 6307471, at *8 (S.D.N.Y. Nov. 25, 2019) (quoting *Siddiqi v. N.Y.C. Health & Hosp.s Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008)); *see also Moy v. Napoli Shkolnik, PLLC*, 23-CV-3788 (DEH), 2024 WL 3498131, at *8 (S.D.N.Y. July 22, 2024) (finding that defendant's denying plaintiff

opportunities to engage in work, eliminating her case management duties, and instructing her to serve as a subordinate without authority were sufficient to be adverse employment actions under 42 U.S.C. § 1981).  However, a lower evaluation score "without any showing of a negative ramification, cannot constitute an adverse employment action."  *Natofsky v. N.Y.C.*, 921 F.3d 337, 352 (2d Cir. 2019); *see also Siddiqi*, 572 F. Supp. 2d at 367 ("[N]egative evaluations, standing alone without any accompanying adverse results, are not cognizable.") (quoting *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001)).

Drawing all reasonable inferences in her favor, Plaintiff has adequately pleaded that receiving an evaluation score of four is an adverse action because Plaintiff alleges that the evaluation score left her worse off by "dampening the prospects of a promotion, raise, or bonus."  *See, e.g.*, *Anderson v. Amazon.com, Inc.*, 23-CV-8347 (AS), 2024 WL 2801986, at *11 (S.D.N.Y. May 31, 2024) (finding that plaintiff's placement on a performance improvement plan was an adverse action because it "adversely affected [her] benefits, privileges, terms, or conditions of employment by . . . tarnishing her permanent record, dampening her prospects of a promotion or raise . . . and so on.").

However, Plaintiff's allegations are inadequate in that she has not plausibly pleaded that she received a lower evaluation score *because of* her disability.  First, Plaintiff alleges that she expected a score of five because of Mackey's comments to her following an hour-long meeting, PAC ¶ 21, and her continued high-level performance after that meeting, *id.* ¶ 24.  But Mackey did not directly supervise Plaintiff.  *Id.* ¶ 21.  Plaintiff does not plead facts to support a causal connection between her score and her disability or accommodation requests.  For example, Plaintiff does not allege that non-disabled colleagues received higher evaluation scores or bonuses.  *Cf. Jones v. Landry's, Inc.*, 23-CV-9920 (GHW) (JW), 2025 WL 463173,

at *5 (S.D.N.Y. Feb. 8, 2025) (explaining that compensation is an "identifiable term or condition of employment," and plaintiff suffered "some harm" when defendants failed to pay Plaintiff what others were paid for the same work) (report and recommendation rejected on other grounds). Nor does Plaintiff allege that she received a score of five prior to her requests for accommodations or disclosure of her disability. Therefore, Plaintiff's allegation that "she was given a lower performance evaluation because she is disabled and made repeated requests for accommodations[,]" PAC ¶ 152, is conclusory and insufficient to support a causal connection between Plaintiff's disability and her evaluation score. *Benson v. Westchester Med. Ctr.*, 20-CV-05076 (PMH), 2022 WL 2702544, at *10 (S.D.N.Y. July 12, 2022) ("Conclusory speculation is insufficient to plead but-for causation under [ ] the ADA[.]") (collecting cases).

Thus, Plaintiff has not adequately alleged that her performance review score was lower because of her disability.

### ii. Changes in Material Responsibilities

Second, Plaintiff asserts that her material responsibilities were significantly diminished, seemingly referencing her claim that Malikin "punished Plaintiff by removing her insurance and referral responsibilities[,]" PAC ¶ 87, responsibilities Plaintiff's manager tasked her with starting in 2017 "due to the high volume of patients[,]" *id.* ¶ 14. Plaintiff does not allege that her job title, compensation, or benefits changed as a result of these extra "responsibilities." Nor does Plaintiff allege that the receipt of these responsibilities was some kind of honor, award, or privilege.

By Plaintiff's own admission, her insurance and referral responsibilities were given to her "as a result of the high volume of patients[,]" *id.*, and were to be completed in addition to

the normal requirements of her job. Plaintiff alleges that when Malikin removed these responsibilities, Malikin "told Plaintiff that she was 'nothing more than part of the mix, just like the others.'" *Id.* ¶¶ 86-87. Thus, by Plaintiff's own admission, Malikin's removal of her extra duties did not result in Plaintiff being treated worse than the rest of her colleagues, but the same as them. Plaintiff does not allege that her remaining job duties were outside of her general responsibilities; to the contrary, Plaintiff alleges that the work was precisely within her job description. "[A]ssignments that are part of an employee's normal responsibilities are not 'adverse employment actions' where . . . the rate of pay and benefits remains the same." *Rodriguez v. Coca Cola Refreshments USA, Inc.*, 12-CV-234, 2013 WL 5230037, at *3 (E.D.N.Y. Sept. 16, 2013) (collecting cases); *see Pimentel*, 2002 WL 977535, at *4 ("[W]here there is no loss of salary, benefits, seniority, tenure or promotion opportunities, there is no adverse employment action."); *see also Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) ("Changes in assignments or responsibilities that do not 'radically change' the nature of work are not typically adverse employment actions." (alteration omitted) (citation omitted)). Thus, removing additional responsibilities, especially where a Plaintiff does not allege the import of those responsibilities with respect to a term or condition of her employment, and where the rate of pay and benefits remain the same, is also not an adverse employment action.

Therefore, removal of Plaintiff's additional responsibilities did not constitute an adverse employment action under the ADA.

### iii.    Denied Access to Computer Equipment

Plaintiff alleges that she was denied necessary equipment to complete her work because the desk provided as part of an accommodation "was too small and fit just one

computer monitor, making it actually more difficult for Plaintiff to complete her job duties[.]" PAC ¶ 54.

Being deprived "of the use of certain [ ] tools and technologies" does not constitute an adverse employment action "for purposes of anti-discrimination lawsuits." *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 333 (E.D.N.Y. 2014) (overruled in part on other grounds). Indeed, "'[n]ot everything that makes an employee unhappy is an actionable adverse action.'" *Id.* (citing *Phillips v. Bowen,* 278 F.3d 103, 117 (2d Cir. 2002) (citation and quotations marks omitted)).

Plaintiff alleges she was deprived of a workspace that could comfortably fit two computer monitors. Instead, the workspace only fit one monitor. This allegation does not constitute "some harm respecting an identifiable term or condition of Plaintiff's employment." *Muldrow*, 601 U.S. at 355; *see Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 435 (E.D.N.Y. 2015) (withholding of office supplies constituted "mere inconvenience," not an adverse change); *cf. Pimentel*, 2002 WL 977535, at *4 ("[D]enial of a request to transfer to an office of the same agency or department in a location more convenient to the employee's home, where there will [be] no significant change in duties or opportunities for advancement, does not constitute an adverse employment action."). Therefore, Plaintiff has not plausibly alleged that being moved to a smaller desk constituted an adverse employment action.

In any event, even if the denial of Plaintiff's preferred equipment was an adverse employment action, Plaintiff has not alleged such action was a decision motivated by discrimination.

### iv.    Camera Monitoring

Likewise, Plaintiff does not plausibly allege that camera monitoring in and of itself caused "some harm" with respect to a term or condition of Plaintiff's employment.  Generally, "'alleged close monitoring or observation by an employer is not an adverse action.'"  *John v. Brooklyn Eye Center*, 22-CV-06190 (OEM) (VMS), 2025 WL 317515, at *6 (E.D.N.Y. Jan. 28, 2025) (quoting *Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 334 (S.D.N.Y. 2020)).  Moreover, Plaintiff's allegations about camera monitoring are conclusory and vague; without more she cannot allege that she experienced harm.  Therefore, Plaintiff has not plausibly alleged that camera monitoring is an adverse employment action.

### v.    Working Different Hours

Plaintiff alleges that she was required to work different hours to obtain her requested accommodation.  Pl.'s Mot. & Opp. at 8.  According to Plaintiff, for her workspace to be moved from the new workspace to the annex, she "[had] to be moved to answering phones and change her work schedule from the 7:00 a.m. to 3:00 p.m. shift to the 9:00 a.m. to 5:00 p.m. shift[.]"  PAC ¶ 130.  Plaintiff requested "that she be permitted to work the phones in the annex from 7:00 a.m.to 3:00 p.m. as she had been doing on a temporary basis," but "her request was denied."  *Id.* ¶ 132.  Instead, Plaintiff alleges that "she was forced to change her shift" which was burdensome for her because it "impacted her ability to" attend classes and doctor's appointments.  *Id.* ¶¶ 132, 146.  When Plaintiff explained this alleged burden to her manager, "Malikin advised Plaintiff that the classes were not NYU Langone's concern and that the doctor's appointments would need to be rescheduled unless [] Jean-Noel permitted Plaintiff to adjust her schedule."  *Id.* ¶ 146.  Plaintiff alleges that she has been "forced to reschedule many of her medical appointments that she was able to attend when she worked her old 7:00 a.m. to

3:00 p.m. schedule." *Id.* ¶ 150.  Plaintiff further alleges that her "non-disabled colleagues" were "given accommodations to change their schedules to attend school or for childcare reasons," and thus that "Plaintiff was being treated differently than her non-disabled colleague[s]." *Id.* ¶ 146.

Plaintiff has not pleaded facts to support that she experienced some harm with respect to a *term or condition of her employment* by being asked to choose between changing her work hours and working in the annex or keeping her work hours and working in the main office where the cooler temperature might exacerbate her disability.  Although the category of harms that could impact a term or condition of employment is "broad[,]" *see Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269 (2d Cir. 2023) (citation omitted), the harms must be employment related.  That is, the harms must relate to termination, demotion, promotion, or transfer of job activities.  *See generally id.*; *Kauffman v. New York Presbyterian Hosp.*, 762 F. Supp. 3d 309, 317 (S.D.N.Y. 2025) (adopting report and recommendation) (explaining that Plaintiff cannot show that the denial of an accommodation—a "COVID-19 exemption"—"qualifies as an adverse employment action under" *Muldrow* because "the act of denying the exemption did not bring about any harm with respect to a condition of Kauffman's employment.  Even after his exemption was denied, Kauffman continued to be employed just as he had been.").

"Courts have consistently held that a change in schedule, without more, is not an adverse employment action for purposes of a discrimination claim." *Royall v. City of Beacon*, 24-CV-3 (KMK), 2024 WL 4266546, at *14 (S.D.N.Y. Sept. 23, 2024) (cleaned up); *see, e.g.*, *Arroyo-Horne v. City of New York*, 16-CV-3857 (MKB), 2018 WL 4259866, at *11 (E.D.N.Y. Sept. 5, 2018); *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[Neither] receiving [an] unfavorable schedule[ ] [n]or work assignment[ ] . . . rise[s] to the

level of an adverse employment action[ ] because they do not have a material impact on the terms and conditions of [the] [p]laintiff's employment." (alterations omitted)); *Linell v. N.Y.C. Dep't of Educ.*, 15-CV-5085, 2018 WL 1611370, at *6 (E.D.N.Y. Mar. 30, 2018) ("[W]here assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules . . . does not, without more, rise to the level of an adverse employment action.") (collecting cases). Therefore, Plaintiff's allegations about having to work different hours do not rise to the level of an adverse employment action under *Muldrow*.

Because Plaintiff's allegations do not describe an adverse employment action—some harm with respect to a term or condition of employment—Plaintiff fails to state an ADA disability discrimination claim under an adverse employment theory.

### b. Failure to Accommodate Theory

Plaintiff also fails to adequately allege an ADA disability discrimination claim under a failure to accommodate theory.

To proceed under a failure to accommodate theory, "a plaintiff must establish that: '(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Suarez*, 2025 WL 894516, at *12 (citing *Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023) (quoting *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).

The Second Circuit has explained that "employers are *not required* to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll*, 787 F.3d at 94 (emphasis added). The ADA "does not require the employer to provide every

accommodation a disabled employee may request," nor does it "obligate the employer to meet the personal preferences of disabled employees." *Robinson v. Roosevelt Union Free Sch. Dist.*, 10-CV-384, 2012 WL 1980410, at *9 (E.D.N.Y. May 31, 2012) (quoting *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 368 (E.D.N.Y. 2012) and *Raffaele v. City of New York*, 00-CV-3837, 2004 WL 1969869, at *16 (E.D.N.Y. Sept. 7, 2004)).    Rather, "[a]ccommodations need only be sufficient to meet the job-related needs of the individual being accommodated." *Raffaele*, 2004 WL 1969869, at *16; *see also Turowski v. Triarc Companies, Inc.*, 761 F. Supp. 2d 107, 111 (S.D.N.Y. 2011) (quoting *Waltzer v. Triumph Apparel Corp.*, 09-CV-288, 2010 WL 565428, at *6 (S.D.N.Y. Feb. 18, 2010)).

Therefore where, as here, the employer has changed Plaintiff's workstation to alleviate her discomfort, as requested, Plaintiff's claim cannot succeed on a failure to accommodate theory. *Cf. Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 524 (E.D.N.Y. 2019) ("Because [the] [d]efendants did attempt to, and did, accommodate [the] [p]laintiff, she fails to state a plausible failure to accommodate claim under the ADA."). Defendant provided Plaintiff with an accommodation that met her job-related needs. Thus, Plaintiff fails to state an ADA disability discrimination claim based on a failure to accommodate or an adverse employment theory.

Accordingly, Defendant's motion to dismiss Plaintiff's ADA discrimination claim, is granted.

### 3.  Retaliation

Plaintiff alleges that "Defendant retaliated against Plaintiff in violation of the ADA after she complained about the discrimination perpetrated against her by Defendant."  PAC ¶ 170.

To survive a motion to dismiss an ADA retaliation claim, a plaintiff must plausibly allege: (1) that "[s]he engaged in a protected activity, [(2)] that [s]he suffered an adverse employment action, and [(3)]that a causal connection exists between that protected activity and the adverse employment action."  *Ibela v. Allied Universal*, 21-CV-1995, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (quoting *Fox*, 918 F.3d at 72-73); *Clark*, 2022 WL 92060, at *5 (same).  Plaintiff's burden as to this showing is "minimal[.]"  *Perez v. City of New York*, 843 F. App'x 406, 407 (2d Cir. 2021) (first citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); and then citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

### a.  Protected Activity

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."  *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012) (internal quotations and citations omitted).  "When an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication *virtually always* constitutes the employee's opposition to the activity."  *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 331 (S.D.N.Y. 2020) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015)).  "A plaintiff's complaint qualifies as protected activity so long as the plaintiff had 'a good faith, reasonable belief that she was opposing an employment practice made unlawful by [the relevant statute].'"  *Vaughn v. Empire City Casino at Yonkers Raceway*, 14-CV-10297 (KMK), 2017 WL 3017503, at *20

(S.D.N.Y. July 14, 2017) (citing *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)); *see also Hazelwood v. Highland Hosp.*, 763 F. App'x 60, 62 (2d Cir. 2019).

"Activities protected by the ADA include complaints of ADA discrimination . . . and requests for reasonable accommodation." *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017); *see Treglia*, 313 F.3d at 720 ("[A]ttempts to assert . . . rights against discrimination are protected activities."); *Frantti v. N.Y.*, 850 F. App'x 17, 21 (2d Cir. 2021) (same); *Summa v. Hofstra Univ.*, 708 F.3d 115, 126-27 (2d Cir. 2013). "A plaintiff seeking to demonstrate that [he] engaged in protected activity need not show that the behavior [he] opposed in fact violated . . . the ADA." *Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 680-81 (2d Cir. 2016) (per curiam); *see also Mitchell*, 745 F. Supp. 3d at 96. Rather, a plaintiff must allege that the protected activity "was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful" under the ADA. *Mitchell*, 745 F. Supp. 3d at 97; *see also Kelly*, 716 F.3d at 14.

In her Proposed Amended Complaint, Plaintiff alleges[4] that she complained of discrimination on three occasions: (1) "On August 2, 2023, Plaintiff called Human Resources [] and complained about the ongoing disability discrimination and retaliation that she was suffering[,]" PAC ¶ 64; (2) "On August 3, 2023, Plaintiff emailed Mr. Mackey to make him aware of the disability discrimination and retaliation[,]" *id.* ¶ 65; and (3) on September 25, 2023 "Plaintiff also asked Mr. Forte why her complaints had not been addressed. Plaintiff said that she felt that she was being discriminated against," *id.* ¶¶ 128, 137-38. However, none of these occasions is alleged with sufficient specificity to constitute a protected activity.

---

[4] Plaintiff makes numerous allegations, many duplicative, that are often not specific as to the nature of her statements or the claims to which those allegations apply.

Nonetheless, other allegations in Plaintiff's Amended Complaint pertain to her requests for accommodations. Specifically, Plaintiff alleges that she engaged in the following protected activities: (1) "complained to her manager, Thania Jean-Noel and the nurses' manager, Cristina Mendes, and asked them to address the drastically cold temperature in the office[,]" PAC ¶ 27, (2) "sent an internal message to Ms. Jean-Noel and Ms. Mendes again requesting that the temperature be increased[,]" *id.* ¶ 30, (3) complained to Jean-Noel about jokes made by Plaintiff's coworkers about Plaintiff wearing a winter hat and jacket in the office because Plaintiff "felt humiliated, mocked, discriminated against, and harassed for having a medical disability[,]" *id.* ¶¶ 35-40, (4) "emailed Ms. Jean-Noel a [ ] letter [dated July 13, 2023] from her neurologist, Dr. Anastasia Eswar, M.D., which stated that, 'Ms. Andrea Slater is currently under my care. She is treated for severe migraine headaches that can be triggered by cold. Please allow accommodations at work to prevent recurrence of her migraine headaches[,]'" *id.* ¶ 46.

"Requesting a reasonable accommodation of a disability is an ADA-protected activity[.]" *Rodriguez v. Atria Senior Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) (citing *Weixel v. Bd. of Educ.*, 287 F.3d 138, 149 (2d Cir. 2002)); *see Weekes v. JetBlue Airways Corp.*, 21-CV-1965 (MKB), 2022 WL 4291371, at *14 (E.D.N.Y. Sept. 16, 2022) (collecting cases) (same). Therefore, drawing all reasonable inferences in her favor, Plaintiff has only plausibly alleged facts permitting the Court to conclude that the fourth activity constituted protected activity. When Plaintiff engaged in the first, second, and third activities, Plaintiff had not yet alerted her managers that she was disabled.[5] Plaintiff's allegations about her

---

[5] Based on the EEOC complaint, Plaintiff's initial requests, asking Defendant's employees to raise the temperature did not put the employees on notice that Plaintiff was disabled. The statements Plaintiff made to Defendant, as reflected in messages and emails Plaintiff included in her EEOC complaint, were devoid of facts indicating that

complaints to her supervisor do not connect the jokes or the cold temperature to Plaintiff's disability. Plaintiff's alleged statements to her supervisor do not put the employer on notice that Plaintiff was opposing conduct that violated the ADA. An employee's complaint must be "sufficiently pointed to be reasonably understood as a complaint [about] discrimination," *Cardwell v. Davis Polk & Wardwell LLP*, 2020 WL 6274826, at *31 (S.D.N.Y. Oct. 24, 2020) (internal quotations and citations omitted), and the employee must have a "good faith, reasonable belief that the underlying employment practice was unlawful." *Symotyuk-Knoll v. HealthEquity, Inc.*, 2023 WL 5576405, at *5 (S.D.N.Y. Aug. 29, 2023) (cleaned up) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)); *Chukwueze v. NYCERS*, 643 F. App'x. 64, 65 (2d Cir. 2016) (summary order) (citing *Treglia*, 313 F.3d at 720 n.5); *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 234 (E.D.N.Y. 2015) (the plaintiffs did not allege "protected activity" under the ADA because their complaints were about bullying generally and not bullying on account of disability) (citing *Kelly*, 716 F.3d at 17).

The fourth allegation regarding Plaintiff's email to her supervisor attaching her doctor's note, constitutes protected activity because Plaintiff's complaint about her employer's response to the email seeking an accommodation based on her disability is to be reasonably understood as a complaint about disability discrimination.

### b. Adverse Employment Action

Plaintiff alleges that Defendant engaged in multiple adverse employment actions[6]: (1) by presenting Plaintiff "with two options[:] The first option allowed Plaintiff the ability to

---

Plaintiff's desire to avoid being cold was in any way related to a disability, until Plaintiff forwarded the letter from her doctor on August 1.

[6] Plaintiff alleges that she "has applied to at least 30 positions within NYU Langone for which she is qualified, yet she has not been offered any of the positions[.]" PAC ¶ 154. "Plaintiff believes that her disability and requests for accommodations has [sic] prevented her from obtaining a new position with Defendant because she is overqualified

work either in the annex from 9:00 a.m. to 5:00 p.m. or work in the front of the office from 7:00 a.m. to 3:00 p.m[,]" PAC ¶ 145, (2) "by purposely worsening her work conditions and failing to provide the same workstation setup she was given prior to requesting the accommodation[,]" *id.* ¶ 63, (3) by giving her a four instead of a five on her annual evaluation, *id.* ¶ 151, (4) by "singl[ing] [Plaintiff] out" during a January 2024 meeting with front desk team members for "taking too long on her calls with patients and not taking enough patient calls[,]" *id.* ¶ 155, (5) by requesting that Plaintiff remove a notation from a patient's chart about the patient's parent being "rude and abusive to Plaintiff on the phone[,]" *id.* ¶ 156, and (6) alleging that she was not hired into certain roles, *id.* ¶ 154.

"An adverse employment action in the retaliation context is different from the discrimination context." *Nnebe v. City of New York*, 22-CV-3860 (VEC) (SLC), 2023 WL 9100339, at *16 (S.D.N.Y. Nov. 9, 2023) (citing *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 517 (E.D.N.Y. 2019)). The standards for retaliation and discrimination are not "coterminous" and consequently the scope of adverse actions covered by a retaliation claim may be broader than a discrimination claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66-67 (2006). In the retaliation context, employment actions are adverse if they are "materially adverse to a reasonable employee." *Id.* at 57. An action is "materially adverse" if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or

---

for some of the positions to which she applied." *Id.* Plaintiff's allegations as to her inability to obtain another position do not specifically identify what adverse employment action by Defendant prevented her from securing a new position. Plaintiff's complaint is devoid of allegations of specific actions by Defendant that would have prevented Plaintiff from getting another position. "While the ADA and the Rehabilitation Act may require an employer to reassign a disabled employee to a vacant position as a reasonable accommodation, the employee bears the burden of demonstrating the existence of a vacant position for which she is qualified and to which she could be reassigned." *Nixon-Tinkelman v. N.Y.C. Dep't of Health & Mental Hygiene*, 08-CV-4509 (BSJ), 2010 WL 8500158, at *11 (S.D.N.Y. July 26, 2010), *aff'd in part, vacated in part, remanded*, 434 F. App'x 17 (2d Cir. 2011), and *on reconsideration in part*, 08-CV-4509 (BSJ), 2012 WL 2512017 (S.D.N.Y. June 28, 2012) (citing *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)). Therefore, for the purposes of these alleged actions, Plaintiff has alleged both protected activity and causation, but not an adverse employment action. Thus, she has not stated a retaliation claim.

supporting a charge of discrimination." *Ciotti v. City of New York*, 23-CV-10279 (ER), 2025 WL 308022, at *17 (S.D.N.Y. Jan. 27, 2025) (quoting *Burlington*, 548 U.S. at 57); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). Despite the Supreme Court's decision in *Muldrow*, which loosened the adverse action standard for discrimination claims by discarding the materiality requirement, the distinction between adverse employment actions in the retaliation context and discrimination context was left undisturbed. *Muldrow*, 601 U.S. at 357-58 (explaining that the Court in *Burlington* adopted a different adverse employment action standard for reasons unique to the retaliation context).

The significance of a given act of retaliation "will often depend on the particular circumstances[.]" *Burlington*, 548 U.S. at 69 ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.") (quoting *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998)). For example, exclusion of an employee from "a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining" and thus might be actionable. *Id*. This standard does not require the Court to review the nature of the discrimination that led to the filing of the charge but instead focuses on the materiality of the alleged retaliatory action and the perspective of an objectively reasonable person in the plaintiff's position. *Id.* at 69-70; *Hayes v. G&E Real Est. Mgmt. Servs.*, 24-CV-01459 (ER), 2025 WL 769162, at *13 (S.D.N.Y. Mar. 11, 2025).

Plaintiff's first allegation—that her shift change was "burdensome," PAC ¶ 132 because it "impacted her ability to attend classes and doctor's appointments[,]" *id.* ¶ 146— does not constitute an adverse employment action. The change to Plaintiff's schedule is not

an adverse employment action. A schedule change can be "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Ciotti*, 2025 WL 308022, at *17; *cf. Hicks*, 593 F.3d at 169 (concluding that plaintiff's evidence of "punitive scheduling" was sufficient to defeat a motion for summary judgment on retaliation claim); *Forsythe v. N.Y.C. Dep't of Citywide Admin. Servs.*, 733 F. Supp. 2d 392, 401 (S.D.N.Y. 2010), *aff'd*, 428 F. App'x 40 (2d Cir. 2011) (explaining that shift changes that "severely disrupted [plaintiff's] child care routine and ability to spend time with his son" constitute a triable issue of fact that could not be decided on motion for summary judgment); *Cruz v. Liberatore*, 582 F. Supp. 2d 508, 524 (S.D.N.Y. 2008) (explaining that "a transfer that affects a parent's ability to spend time with and care for a child is the type of employment action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'") (citing *Burlington*, 548 U.S. at 57). However, schedule changes are not harmful where the schedule change is a consequence of an accommodation. As in *Arroyo-Horne v. City of New York*, 2018 WL 4259866, at *18 (E.D.N.Y. Sept. 5, 2018), Plaintiff here characterizes a change in her schedule as "retaliation" for her protected activity. Moreover, as in *Arroyo-Horne*, "Defendant's attempt to [provide an accommodation] . . . was intended to benefit Plaintiff and *improve* her working conditions, not serve as a deterrent to her making or supporting a discrimination charge." *Id.* (emphasis in original). Therefore, the change to Plaintiff's schedule cannot be construed as an adverse employment action based on Plaintiff's own allegations as to the reason for the change. *See id.*

Plaintiff's second allegation, regarding being moved to a smaller workspace, also does not constitute an adverse employment action. Plaintiff alleges that her new workspace contained a smaller desk, such that it could not fit two computer monitors, which made it more

difficult for Plaintiff to complete her job duties. This is precisely the kind of "trivial harm"— *i.e.*, "those petty slights or minor annoyances that often take place at work and that all employees experience"—that is not materially adverse. *Burlington*, 548 U.S. at 68; *see Mcloughlin v. Vill. of Southampton*, CV 23-6586 (GRB) (AYS), 2024 WL 4189224, at *3 (E.D.N.Y. Sept. 13, 2024) (granting a defendant's motion to dismiss where the "plaintiff did not suffer an adverse action based on the alleged relocation of her workstation, even if the new location was less convenient or desirable."); *accord Hicks*, 593 F.3d at 165; *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011); *see also Hawley v. OPWDD-Cent. NY DDSO*, 24-CV-248 (AJB/TWD), 2025 WL 1127447, at *16 (N.D.N.Y. Apr. 16, 2025) (dismissing Plaintiff's retaliation claim where she alleged that the "materially adverse" action she suffered was being relocated to the "worst cubicle location in the entire building" that is "two feet away from an outside door with a high traffic area" and is always "cold or hot depending on the season[,]" after she filed her EEOC rebuttal).

Plaintiff's third alleged adverse employment action, that she received a 25% lower bonus in connection with her 2023 annual performance review, plausibly alleges an adverse employment action for the same reasons cited above. *See supra* Discussion Section A.2.a.i. *See Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 283 (S.D.N.Y. 2024) ("The denial of a raise or bonus that an individual is entitled to or expects to receive as a matter of course constitutes 'a materially adverse change in the terms and conditions of employment and constitutes an adverse employment action.'") (citation omitted). Moreover, Defendant "does not dispute that, for purposes of a retaliation claim and for purposes of the Motion only, that . . . being given a lower performance evaluation than she expected (thereby receiving a lower bonus) could be [an] actionable adverse act[] [.]" Defendant's 7/14/2025 Letter to the Court, ECF 24, at 2.

Plaintiff's fourth and fifth alleged adverse employment actions—that she was "singled out" during a January 2024 meeting with front desk team members for "taking too long on her calls with patients and not taking enough patient calls[,]" PAC ¶ 155, and was asked to remove a notation from a patient's chart about the patient's parent being "rude and abusive to Plaintiff on the phone[,]" *Id.* ¶ 156—are not actionable adverse acts because general criticism related to work is not an adverse employment action. *Mcloughlin*, 2024 WL 4189224, at *4 (finding that receiving unfair criticism or insulting language in the presence of other employees do not constitute adverse employment actions "without further indication of a material impact on the terms and conditions of employment." (quoting *Richards*, 2022 WL 329226, at *9 (internal quotations omitted))); *see also Pincus v. N.Y.C. Dep't of Educ.*, 16-CV-5253(AMD)(JO), 2017 WL 10187671, at *4 (E.D.N.Y. Nov. 30, 2017) ("However, "a bruised ego," a "demotion without a change in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are insufficient to constitute a tangible or material adverse employment action.") (citing *Saunders v. Queensborough Cmty. Coll.*, 13-CV-5617, 2015 WL 5655719, at *8 (E.D.N.Y. Sept. 24, 2015) (internal citations and quotations omitted). Therefore, Plaintiff's fourth and fifth allegations do not state actions that would have been materially adverse to a reasonable employee.

Plaintiff's sixth alleged adverse employment action, "her disability and requests for accommodations ha[ve] prevented her from obtaining a new position with Defendant[,]" states an adverse employment action. PAC ¶ 154. "[T]he Second Circuit has held that a "refusal to hire" or "failure to hire" may constitute an adverse employment action." *Mota v. Abalon Exterminating Co., Inc.*, 22-CV-7602 (MKV), 2024 WL 4202687, at *7 (S.D.N.Y. Sept. 16, 2024) (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001))

(defining adverse employment action broadly to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." (internal citation omitted)).  "[T]o state a retaliation claim based on 'failure to hire,' a plaintiff must allege that [s]he applied for and was qualified for a job for which the employer was seeking applicants, and [s]he was rejected for the position." *Id.* at *8.  Here, Plaintiff alleges that she applied for and was "overqualified" for jobs for which she was ultimately rejected.  PAC ¶ 154.  Moreover, Defendant also does not dispute that "not being hired into various positions . . . could be [an] actionable adverse act[]." Defendant's 7/14/2025 Letter to the Court at 2.

Finally, consistent with the *Burlington* Court's instruction, *see* 548 U.S. at 69, the Court has considered whether the alleged retaliatory adverse acts, in the aggregate, "can be sufficiently 'substantial in gross' as to be actionable[,]" *Hicks*, 593 F.3d at 165 (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)).  The Court concludes that because the actions Plaintiff alleges could, in the aggregate, "well dissuade a reasonable worker from making or supporting a charge of discrimination[,]" *Ciotti*, 2025 WL 308022, at *13, these actions are "materially adverse to a reasonable employee."  *Id.* at 17.

### c.  Causal Connection

To allege a causal connection, Plaintiff must allege that "but for" the protected activity, the adverse action would not have been taken.  *See Tafolla*, 80 F.4th at 125 (quoting *Natofsky*, 921 F.3d at 347) (internal quotation marks omitted).  Causation may be shown either through direct evidence of retaliatory animus or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment."  *Id.* (internal quotation marks and citation omitted); *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024).  Plaintiff

29

does not allege facts supporting direct evidence of retaliatory animus, so the Court considers whether there is temporal proximity between the alleged adverse actions.

As to Plaintiff's third allegation, that she received a 25% lower bonus in connection with her 2023 annual performance review in retaliation for her accommodation requests, PAC ¶ 153, Plaintiff has alleged facts to support that she received reduced compensation because of her protected activity.  Defendant argues that "the time period between her protected activity and the performance evaluation (five months)[7] is too attenuated to support an inference of retaliatory animus."  Defendant's 7/14/2025 Letter to the Court at 3.  Plaintiff alleges that her performance evaluation score was released in November 2023.  PAC ¶ 151.  Plaintiff alleges that she engaged in protected activity, by sending Defendant her physician's letter, in August 2023.  *Id.* ¶ 46.

Drawing all inferences in Plaintiff's favor, these allegations of protected activity, followed three months later by an adverse action, sufficiently allege a causal connection.  *Cf. Wallace v. Esper*, 18-CV-6525 (RA), 2019 WL 4805813, at *9 (S.D.N.Y. Sept. 30, 2019) (denying the defendant's motion to dismiss as to a retaliation claim pertaining to acts of retaliation that occurred three months after the plaintiff engaged in protected activity); *Murray v. Dutchess Cnty. Exec. Branch*, 17-CV-9121 (KMK), 2019 WL 4688602, at *13 (S.D.N.Y. Sept. 25, 2019) (holding that the plaintiff's allegation of a two-to-three-month gap between "engaging in protected activity" and employment termination was "sufficiently narrow, at the motion-to-dismiss stage, to satisfy the requisite causal connection" (collecting cases)); *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 785-86 (S.D.N.Y. 2019) (finding that a gap of eight months between the alleged protected activity and alleged

---

[7] The Court does not know which protected activity Defendant refers to that occurred five months prior to Plaintiff's employment evaluation.

retaliatory conduct may be sufficient to allow an inference of causation); *Dawson v. City of New York*, 09-CV-5348 (PGG), 2013 WL 4504620, at \*18 (S.D.N.Y. Aug. 19, 2013) (noting that "[w]hile the Second Circuit has not established a 'bright line rule' with respect to the limits of temporal proximity, three months falls within the time period sufficient to permit an inference of retaliation"); *Reuland v. Hunes*, 01-CV-5661 (JG), 2004 WL 1354467, at \*11 (E.D.N.Y. June 17, 2004) (finding that a four-and-a-half month gap between the protected activity and adverse employment action does not preclude a causal connection).

As to Plaintiff's sixth allegation, that she was not hired for jobs for which she was qualified, PAC ¶ 154, Plaintiff has not alleged facts to support that she was not hired because of her protected activity. Plaintiff alleges that she was rejected from positions as early as May 2023—which is months before August 1, 2023, when she made her request for accommodation and complained about discrimination. *Id.* When an "adverse employment action [occurs] before the protected activity [takes] place . . . [the plaintiff] has consequently failed to demonstrate a causal connection between [the protected activity] and any adverse treatment to which [the plaintiff] was subjected." *Cutler v. Stop & Shop Supermarket Co.*, 513 F. App'x 81, 84 (2d Cir. 2013). Therefore, because the alleged adverse actions began before Plaintiff's protected activity, Plaintiff has failed to allege facts supporting a causal connection.

Finally, Plaintiff's alleged retaliatory adverse acts, in the aggregate, which "can be sufficiently 'substantial in gross' as to be actionable[,]" *Hicks*, 593 F.3d at 165 (quoting *Zelnik*, 464 F.3d at 227), are also temporally related to Plaintiff's employment evaluation. "Where an employee has engaged in continuing protected activity, all of that activity should be taken into account in analyzing its causal relationship to the adverse employment action."

*Holava-Brown v. Gen. Elec. Co.*, 189 F.3d 461, 1999 WL 642966 at *4 (2d Cir. 1999) (unpublished opinion).

Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that "[t]aken together," Plaintiff's alleged protected activities, adverse employment actions, and the connections between them, "plausibly paint a mosaic of retaliation and an intent to punish [Plaintiff] for complaining of discrimination." *Vega*, 801 F.3d at 92.  Therefore, Defendant's motion to dismiss Plaintiff's ADA retaliation claim is denied.

## B.  NYSHRL Claims

Plaintiff brings disability discrimination and retaliation claims under the NYSHRL in her Proposed Amended Complaint.  PAC ¶¶ 166, 174.

### 1.  Disability Discrimination

While ADA and NYSHRL disability discrimination claims are nearly identical, two distinctions separate them.  Following the 2019 amendments to the NYSHRL, NYSHRL claims are construed more liberally than ADA claims.  *Weekes v. JetBlue Airways Corp.*, 21-CV-1965 (MKB), 2022 WL 4291371, at *7 (E.D.N.Y. Sept. 16, 2022); *see* N.Y. EXEC LAW § 300, *et seq.*  Additionally, "an individual can be disabled under the [NYSHRL] if his or her impairment is demonstrable by medically accepted techniques; it is not required [as with the ADA] that the impairment substantially limit that individual's normal activities." *Davis v. Goodwill Indus. of Greater New York & New Jersey, Inc.*, 15-CV-7710 (ER), 2017 WL 1194686, at *13 (S.D.N.Y. Mar. 30, 2017) (quoting *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 155 (2d Cir. 1998) (superseded by revisions to the ADA on other grounds)).

"[T]o state a [*prima facie*] claim for discrimination under the NYSHRL, a plaintiff must 'show that (1) he is a member of a protected class; (2) he was qualified for the position he

32

held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination.'" *Foster v. United States Parcel Serv. of Am., Inc.*, 18-CV-1706 (NSR), 2025 WL 1745780, at *5 (S.D.N.Y. June 24, 2025) (quoting *Salazar v. Ferrara Bros. Bldg. Materials Corp.*, 13-CV-3038 (JG) (VMS), 2015 WL 1535698, at *5 (E.D.N.Y. Apr. 6, 2015)).

As an initial matter, the Court notes that Plaintiff's Complaint and Proposed Amended Complaint appear to contain errors in the NYSHRL disability discrimination sections. Plaintiff's Proposed Amended Complaint has two NYSHRL-related headings: "COUNT II: DISABILITY DISCRIMINATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW," and "COUNT IV: RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW[.]" *See* PAC.   However, the disability-related heading only references a retaliation claim.  *See id.* ¶ 166 ("By the actions described above, Defendant retaliated against Plaintiff in violation of the NYSHRL after she complained of the discrimination perpetrated against her by Defendant); *id.* ¶ 174 ("By the actions described above, Defendant retaliated against Plaintiff in violation of the NYSHRL after she complained of the discrimination perpetrated against her by Defendant.").   This labelling error is not a basis on which to dismiss this claim.  *See Foman v. Davis*, 371 U.S. 178, 181 (1962) (remarking that it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided" because of "mere technicalities[.]"); *Crocker v. United States*, 563 F. Supp. 496, 499 (S.D.N.Y. 1983) ("The Court of Appeals for the Second Circuit has held that claims should not be dismissed because of 'trivial mislabeling.'") (quoting *Scovill Mfg. Co. v. Fitzpatrick*, 215 F.2d 567, 570 (2d Cir. 1954)).

Labelling error aside, Plaintiff has failed to state a claim for disability discrimination under the NYSHRL. The primary distinction between NYSHRL and ADA disability discrimination claims is that the definition of a disability is broader under the NYSHRL. *Wellner v. Montefiore Med. Ctr.*, 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019). Because the parties do not dispute that Plaintiff was disabled, the analysis of the NYSHRL and ADA disability discrimination claims is the same. *See Weekes*, 2022 WL 4291371, at *7; *Foster*, 2025 WL 1745780, at *5. Plaintiff fails to state a NYSHRL disability claim for the same reasons that she has failed to state an ADA disability discrimination claim. *See supra* Discussion Section A.2.

Therefore, Defendant's motion to dismiss Plaintiff's NYSHRL disability discrimination is granted.

### 2. Retaliation

"To state a claim for retaliation under the NYSHRL, a plaintiff must demonstrate that [s]he '(1) was engaged in a protected activity, (2) that defendant[] knew of the protected activity, (3) that defendant[] took adverse employment actions against plaintiff, and (4) a causal connection between the protected activity and the adverse action.'" *Foster*, 2025 WL 1745780, at *5 (quoting *LaSalle v. City of New York*, 13-CV-5109 (PAC), 2015 WL 1442376, at *6 (S.D.N.Y. Mar. 30, 2015)). "The plaintiff's burden of proof at the *prima facie* stage is '*de minimis*.'" *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 335 (S.D.N.Y. 2024) (quoting *Hicks*, 593 F.3d at 166). At the motion to dismiss stage, this burden is further reduced. *See Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) ("the allegations in the complaint need only give plausible support to the reduced prima facie requirements that

arise under *McDonnell Douglas* in the initial phase of [NYSHRL] litigation.")
(quoting *Littlejohn*, 795 F.3d at 316).

Under the NYSHRL, unlike the ADA, requesting an accommodation does not constitute
"protected activity." *Kiley v. AIM Servs., Inc.*, 24-CV-00869 (MAD/PJE), 2025 WL 1282365,
at *6 (N.D.N.Y. May 2, 2025); *see Marshall v. Westchester Med. Ctr. Health Network*, 22-
CV-7990 (NSR), 2024 WL 665200, at *14 (S.D.N.Y. Feb. 16, 2024) (explaining that "a request
for reasonable accommodation is not a protected activity for purposes of a retaliation claim"
under NYSHRL) (quoting *Mejia v. City of New York*, 17-CV-2696 (NGG) (JO), 2020 WL
2837008, at *13 (E.D.N.Y. May 30, 2020)); *Scarville v. Living Res. Corp.*, 21-CV-807
(GTS/CFH), 2022 WL 4365863, at *11 (N.D.N.Y. Sept. 21, 2022) ("[T]he NYSHRL does not
include requests for reasonable accommodation as 'protected activity.'") (citations omitted)).

In reviewing Plaintiff's ADA disability discrimination claim, the Court found that
Plaintiff alleges that she engaged in three protected activities. *See supra* Discussion Section
A.3.a. Each purported "protected activity" is an accommodation request, none of which is
considered a protected activity for retaliation claim purposes. Because none of these alleged
accommodation related protected activities can support an NYSHRL retaliation claim, Plaintiff
fails to state an NYSHRL retaliation claim. *See Kiley*, 2025 WL 1282365, at *7.

Accordingly, Defendant's motion to dismiss Plaintiff's NYSHRL retaliation claim is
granted.

## CONCLUSION

For the reasons above, Plaintiff's motion to amend the complaint [ECF 12] is granted, and the Proposed Amended Complaint [ECF 12-2] is deemed the operative complaint in this action.

Further, Defendant's motion to dismiss [ECF 14, 15, 16] is granted with respect to Plaintiff's disability discrimination claims under the ADA and NYSHRL and her retaliation claim under the NYSHRL and denied as to Plaintiff's ADA retaliation claim.  Accordingly, Plaintiff's disability claims under the ADA and NYSHRL and her retaliation claim under the NYSHRL are dismissed.

Within 21 days of this order, Defendant shall file an answer to Plaintiff's ADA retaliation claim, and the parties shall proceed to discovery on this claim.

SO ORDERED.

Dated: August 4, 2025
        Brooklyn, New York

/s/ _____
ORELIA E. MERCHANT
United States District Judge